# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In re the Detention of: | ) | No. 72130-5-I |
| | ) | |
| M.A., | ) | DIVISION ONE |
| | ) | |
| Appellant. | ) | |
| | ) | |
| | ) | UNPUBLISHED |
| | ) | |
| | ) | FILED: July 20, 2015 |
| | ) | |

Cox, J. — M.A. appeals the order committing her to involuntary treatment for a period of 14-days. M.A. does not challenge the court's determination that her mental disorder presents a likelihood of serious harm to others. And she is precluded from raising the sufficiency of notice in the petition of the grave disability allegation for the first time on appeal. M.A.'s trial counsel did not provide ineffective assistance. We affirm.

In June 2014, King County Designated Mental Health Professionals petitioned for the initial detention of M.A. She was detained after a hearing.

Thereafter, there was a petition for 14 days of involuntary treatment. This petition alleged that M.A. had a schizoaffective disorder that presented a likelihood of serious harm to others and/or others' property. The petition did not allege that M.A. was gravely disabled.

The case proceeded to the probable cause hearing. At the hearing, the State stated that it also alleged "that [M.A.] is gravely disabled under prong (b) of

the statute."[1] It indicated that it would be calling M.A.'s case manager and a doctor from Harborview as witnesses.

M.A. moved to dismiss the case for reasons not at issue in this appeal. The next day, the court denied M.A.'s motion. The State again indicated that it was "also proceeding under a 'harm to others' allegation, in addition to grave disability, prong (b)."[2] The prosecutor further stated that she "did correct [her]self to [defense counsel] [that] morning."[3] M.A.'s trial counsel did not object to the State proceeding on both the "harm to others" allegation and the grave disability allegation.

At the conclusion of the hearing, the trial court found that the State had proven both allegations by a preponderance of the evidence. It concluded that M.A. presented a significant risk of harm to others and was gravely disabled. It entered findings of fact, conclusions of law, and an order committing M.A. for 14 days of involuntary treatment.

M.A. appeals.

## LIKELIHOOD OF SERIOUS HARM TO OTHERS

We first note that M.A. does not challenge the trial court's determination that she had a mental disorder that presented a likelihood of serious risk of harm to others, one of the alternatives that the trial court considered at the hearing. Thus, her commitment on this basis may be affirmed. The question is whether

---

[1] Report of Proceedings (June 10, 2014 and June 11, 2014) at 3.

[2] Id. at 48.

[3] Id.

she can now challenge for the first time on appeal her commitment on the alternative basis that she was also gravely disabled. We address this question in the remainder of this opinion.

### NOTICE

M.A. argues for the first time on appeal that the trial court erred in committing her for 14 days based, in part, on a finding of grave disability where the State did not allege grave disability in its commitment petition. She asserts, "Because the petition lacked the notice required by statute and due process, this Court should reverse the finding of grave disability."[4] The threshold question, therefore, is whether she may raise this issue for the first time on appeal. We hold that she cannot.

This court may refuse to review any claim of error that was not raised in the trial court.[5] And generally, a theory not presented to the trial court will not be considered on appeal.[6]

Under RAP 2.5(a)(3), a claim of error may be raised for the first time on appeal if it is a manifest error affecting a constitutional right. To raise an error for the first time on appeal, an appellant must demonstrate (1) the error is "truly of constitutional dimension," and (2) the error is manifest.[7]

---

[4] Brief of Appellant at 5.

[5] RAP 2.5(a).

[6] Washburn v. Beatt Equip. Co., 120 Wn.2d 246, 290, 840 P.2d 860 (1992).

[7] State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).

"In analyzing the asserted constitutional interest, we do not assume the alleged error is of constitutional magnitude."[8] Rather, "[w]e look to the asserted claim and assess whether, if correct, it implicates a constitutional interest as compared to another form of trial error."[9]

After determining the error is of constitutional magnitude, the appellate court must determine whether the error was manifest.[10] "'Manifest in RAP 2.5(a)(3) requires a showing of actual prejudice.'"[11] "To demonstrate actual prejudice, there must be a 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'"[12]

M.A. did not raise the sufficiency of notice of the grave disability allegation below. Moreover, while she cites RAP 2.5, she does not discuss its applicability in this case. Nevertheless, we do so now.

In analyzing M.A.'s claim, we "do not assume the alleged error is of constitutional magnitude."[13] Further, we conclude that M.A.'s asserted error— that certain court rules and statutes relating to notice were not followed—is not truly of constitutional dimension.

---

[8] Id.

[9] Id.

[10] Id. at 99.

[11] Id. (internal quotation marks omitted) (quoting State v. Kirkman, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)).

[12] Id. (alteration in original) (internal quotation marks omitted) (quoting Kirkman, 159 Wn.2d at 935).

[13] O'Hara, 167 Wn.2d at 98.

"Due process requires that the State provide the respondent with sufficient notice of the facts supporting the petition for commitment."[14]

Dunner v. McLaughlin is instructive.[15] In that case, the supreme court acknowledged that there is a requirement to serve notice of all alternative grounds on which commitment is sought.[16] In the two underlying appeals in that case, the petitions for commitment had been amended at trial. One was amended at the close of the respondent's case in chief and the other was amended on the first morning of trial, prior to seating the jury.[17] Both added an additional ground for commitment, and the petitioners claimed that their due process rights were violated by commitment pursuant to amended pleadings.

In considering these arguments, the supreme court stated, "The real issue is preparedness to meet new allegations raised by amendment."[18] And it noted that in the underlying cases, neither petitioner claimed surprise, alleged unpreparedness to meet the new issue, requested a continuance, or was prejudiced in maintaining his respective defense against the amended petitions.[19] Thus, the court held that neither petitioner was denied due process.

---

[14] In re Det. of R.P., 89 Wn. App. 212, 216, 948 P.2d 856 (1997).

[15] 100 Wn.2d 832, 676 P.2d 444 (1984).

[16] Id. at 849.

[17] Id. at 835-37.

[18] Id. at 849.

[19] Id.

Similarly, here, M.A. fails to show that she was unprepared to meet the grave disability allegation.

M.A. had notice of the grave disability allegation prior to the start of the hearing. In opening statements, M.A.'s trial counsel indicated that he would argue that M.A. "is not gravely disabled and is not a risk of harm to others . . . ."[20] And her trial counsel did not claim surprise, allege unpreparedness to meet the new issue, or request a continuance. Rather, he defended through cross-examination and argument. On cross-examination of the State's two witnesses, he elicited testimony that M.A. was compliant with taking her medications and had shown some improvement. And in closing argument, he argued that the State had not met its burden with respect to the grave disability prong, because M.A. was taking her medication and the State could not show that she was incapable of making a rational decision about her need for treatment. In short, M.A. fails to show a constitutional error.

Further, M.A. fails to show that the alleged error, even if constitutional, was "manifest." As just discussed, M.A. had oral notice of the grave disability allegation prior to the hearing. Additionally, her trial counsel defended through cross-examination and argument. Nevertheless, the court committed her on both the harm to others and grave disability grounds. In short, she fails to show actual prejudice.

---

[20] Report of Proceedings (June 10, 2014 and June 11, 2014) at 49.

M.A. asserts that had she and her counsel received timely notice, "[she] *may* have presented her case differently."[21] But this is nothing more than a speculative and conclusory assertion. There is nothing in this record that supports the conclusion that counsel would have presented her case differently with more advance notice of the amendment.

M.A. cites In re Dependency of A.M.M. to argue that this issue can be raised for the first time on appeal.[22] That case involved challenge to the sufficiency of notice in a parental termination case.[23] This court stated in a footnote, without further analysis, that the issue could be raised for the first time on appeal under RAP 2.5(a)(3).[24] But that case is distinguishable.

In A.M.M., there was "no evidence in the record" that the petitioner was ever informed of one of the parental deficiencies upon which the trial court relied in terminating her parental rights.[25] Here, in contrast, M.A. received notice of the grave disability allegation prior to the hearing, and her trial counsel defended against the allegation at the hearing. Accordingly, A.M.M. is not analogous.

---

[21] Brief of Appellant at 9 (emphasis added).

[22] 182 Wn. App. 776, 332 P.3d 500 (2014).

[23] Id. at 790.

[24] Id. at 790 n.8.

[25] Id. at 792.

M.A. also cites In re Detention of Cross, asserting that it "controls the result in this case."[26] In that case, the court reversed an order revoking Eloise Cross's less restrictive placement because she was not given notice of each of the alternative grounds on which revocation was sought.[27] The court concluded that this failure violated statutory notice requirements.[28] But Cross did not address whether the sufficiency of notice could be raised for the first time on appeal under RAP 2.5(a)(3). Furthermore, Cross is distinguishable. As already discussed, M.A. had notice of the grave disability allegation prior to the hearing and was not prejudiced. In short, reliance on Cross is misplaced.

In sum, M.A. fails to establish there is any manifest error affecting a constitutional right, as RAP 2.5(a) requires.

Because we conclude that M.A. cannot raise this issue for the first time on appeal, we need not address the State's argument that this case is moot.

## INEFFECTIVE ASSISTANCE OF COUNSEL

M.A. next argues that her trial counsel provided ineffective assistance "by failing to object to commitment on the grave disability allegation despite the lack of notice."[29] We disagree.

---

[26] Brief of Appellant at 8 (citing In re Det. of Cross, 99 Wn.2d 373, 662 P.2d 828 (1983)).

[27] Cross, 99 Wn.2d at 383-84.

[28] Id.

[29] Brief of Appellant at 13.

The right to counsel includes the right to effective assistance of counsel.[30] An ineffective assistance of counsel claim has two components.[31] If a defendant cannot demonstrate either component, the ineffective assistance of counsel claim fails.[32]

First, the defendant must show that counsel's performance was deficient.[33] This requires showing that counsel's performance "fell below an objective standard of reasonableness."[34] Judicial scrutiny of counsel's performance is "highly deferential."[35] "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[36]

Second, the defendant must show that the deficient performance prejudiced the defense.[37] Prejudice is defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

---

[30] Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Crawford, 159 Wn.2d 86, 97, 147 P.3d 1288 (2006).

[31] Strickland, 466 U.S. at 687.

[32] Id. at 697; State v. Foster, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

[33] Strickland, 466 U.S. at 687.

[34] Id. at 688.

[35] Id. at 689.

[36] Id. (quoting Michel v. State of La., 350 U.S. 91, 101, 76 S. Ct. 158, 100 L. Ed. 83 (1955)).

[37] Id. at 687.

been different."[38] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[39]

Here, even if trial counsel's performance was deficient, M.A. fails to show prejudice. As the supreme court acknowledged in McLaughlin, petitions for commitment can be amended in conformance with CR 15.[40] Thus, M.A. cannot show that an objection to the grave disability allegation would have been successful.

Moreover, M.A. fails to show that the result of the proceeding would have been different. Even if trial counsel had objected to the grave disability allegation, the alternative ground of "harm to others," would have been sufficient to sustain the commitment order. For these reasons, M.A. fails to establish any prejudice.

M.A. argues that she was prejudiced in two ways. First, she asserts that "had [trial] counsel objected, the State would not have been permitted to proceed on the grave disability allegation . . . ."[41] Second, she asserts that "the grave disability 'finding' may have future consequences distinct from the consequences flowing from the court's harm finding."[42] But M.A. fails to explain how either of these arguments establish "a reasonable probability that, but for counsel's

---

[38] Id. at 694.

[39] Id.

[40] McLaughlin, 100 Wn.2d at 849.

[41] Brief of Appellant at 14.

[42] Id. at 14-15.

unprofessional errors, the result of the proceeding would have been different."[43]

Thus, these arguments are not persuasive.

We affirm the order of commitment.

_Cox, J._

WE CONCUR:

---

[43] Strickland, 466 U.S. at 694.